**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER WILLIAMS, on behalf of himself and all others similarly situated, | ) )  ) | |
| Plaintiff, | ) )  ) | Case No.  1:19-cv-08198 |
| v. | ) )  ) | |
| JACKSON PARK SUPPORTIVE LIVING FACILITY, LLC and JACKSON PARK SLF, LLC, | ) )  )  ) | |
| Defendants. | ) )  ) | |

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Defendant Jackson Park SLF, LLC ("Jackson Park SLF")
hereby removes this action, currently pending in the Circuit Court of Cook County, Illinois as
Case No. 2019-CH-09286, to the U.S. District Court for the Northern District of Illinois,
pursuant to 28 U.S.C. §§ 1331, 1441, 1446, and 1453 because Plaintiff Williams' claims are
completely preempted by the Labor Management Relations Act.

## BACKGROUND

1.      On August 12, 2019, Plaintiff Christopher Williams ("Williams"), on behalf of
himself and others similarly situated, initiated this lawsuit against co-defendant Jackson Park
Supportive Living Facility, LLC in Cook County, Illinois, by filing a class action complaint. The
complaint did not name Jackson Park SLF as a defendant.

2.      On October 22, 2019, Williams filed an amended complaint (attached hereto as
Exhibit A) and added Jackson Park SLF as a defendant (hereinafter "the State Court Action").

3.      On November 14, 2019, Jackson Park SLF was served with a copy of the
summons and complaint in the State Court Action. (Ex. B.)

4.     By his complaint, Williams alleges that Jackson Park SLF violates the Illinois Biometric Privacy Act, 740 ILCS 14/1 et seq. ("BIPA"), through the use of handprint technology. Williams seeks, on behalf of himself and a putative class, various forms of relief, including statutory damages.

## REMOVAL IS TIMELY

5.     This Notice of Removal is timely filed under 28 U.S.C. § 1446(b)(1) because it is filed within 30 days of the date on which Jackson Park SLF was served with the initial pleading. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (time for filing a notice of removal does not begin to run until a party has been formally served).

## REMOVAL IS PROPER UNDER 28 U.S.C. § 1331

6.     Pursuant to 28 U.S.C. § 1331, removal is proper because the civil action arises under the laws of the United States because it is preempted by federal labor law, specifically the Labor Management Relations Act.

7.     Williams has been employed with Jackson Park SLF since October 2016 as a Certified Nurse Aid (commonly referred to as a "CNA"). Pokorny Decl., ¶ 5.

8.     During all times relevant to this lawsuit, Jackson Park SLF has been a party to collective bargaining agreements (CBAs) with the United Food & Commercial Workers International Union Local 1546 ("Local 1546"). *See* Pokorny Decl., ¶¶ 6-7; Ex. C (Labor Agreement, dated June 1, 2014 to May 31, 2017); Ex. D (Labor Agreement, dated June 1, 2017 to May 31, 2020).[1]

---

[1] As explained in the Pokorny Declaration, the first labor agreement (Ex. C) was between Local 1546 and Jackson Park Supportive Living Facility, LLC and dated from June 1, 2014 to May 31, 2017. Pokorny Decl., ¶ 6. In January 2016, Jackson Park SLF purchased the business of Jackson Park Supportive Living Facility, LLC and stepped into its shoes with regard to the initial labor agreement (Ex. C). Pokorny Decl., ¶ 7. At the expiration of that agreement, Local 1546 and

9.     Pursuant to the CBAs, which were ratified by Local 1546's members, Local 1546 has at all relevant times been the "sole collective bargaining agent" for all full-time and part-time Certified Nurse Aids. Pokorny Decl., ¶ 8; Ex. C at § 1.1; Ex. D at § 1.1. As a Certified Nurse Aid and a member of Local 1546, Williams' terms and conditions of employment have been governed by the CBAs. Pokorny Decl., ¶¶ 5-8.

10.    The CBAs contain a broad "Management Rights" section. *See* Ex. C at § 3.1; Ex. D at § 3.1. In pertinent part, the CBAs provide that "Management of the Business, the control of the premises and direction of the working force are vested exclusively in the Employer subject to the provision of this Agreement. The right to manage includes, but is not limited to the following: . . .; to determine or change the methods and means by which its operation is or ought to be carried on; to set reasonable work standards; . . .; to introduce new and improved methods or facilities; and to change existing methods or facilities and the right to sub-contract work." *Id.* The Management Rights section further makes clear that: "The Employer has and retains the powers, functions, rights and authority it would have, but for the signing of this Agreement, except those specifically abridged or modified by the express provisions of this Agreement, provided, however, that such powers, functions, rights, and authority, shall not be enforced or exercised contrary to or inconsistent with the provisions of this Agreement" *Id.*

11.    The CBAs contain a "Grievance Procedure," which applies to all grievances by the Union or any employee "with respect to the interpretation or application of, or compliance with, [the CBAs] . . . ." and culminates in arbitration in accordance with the rules of the Federal Mediation and Conciliation Service." *See* Ex. C at §§ 18.1-18.2; Ex. D at §§ 18.1-18.2.

---

Jackson Park SLF entered into the second labor agreement (Ex. D) that is substantially similar to the initial labor agreement. *Id.*

12.     In *Miller v. Southwest Airlines Co.*, 926 F.3d 898, 904 (7th Cir. 2019), the Seventh

Circuit held that highly similar BIPA claims related to a finger scan time clock were preempted

by federal labor law and ordered that the claims be dismissed to arbitration. It reasoned that a

union may be an employee's "legally authorized representative" under BIPA and may consent on

the employee's behalf to the collection and use of biometric data. *Id.* at 903. Therefore, it held

that whether the unions "did consent to the collection and use of biometric data, or perhaps grant

authority through a management-rights clause, is a question for an adjustment board. Similarly,

the retention and destruction schedules for biometric data, and whether [employers] may use

third parties to implement timekeeping and identification systems, are topics for bargaining

between unions and management." *Id.* The Court further explained that the fact that BIPA

"concerns workers' privacy does not distinguish it from many other subjects, such as drug

testing, that are routinely covered by collective bargaining and on which unions give consent on

behalf of the whole bargaining unit." *Id.* at 904. Then, concisely summarizing its rationale, the

Seventh Circuit stated, "It is not possible even in principle to litigate a dispute about how an

[employer] acquires and uses fingerprint information for its whole workforce without asking

whether the union has consented on the employees' collective behalf. That's why this dispute

must go to an adjustment board." *Id.*

13.     Although *Miller* found the claims preempted under the Railway Labor Act (RLA),

the decision applies with equal force under the Labor Management Relations Act (LMRA). In

fact, the standard used to determine preemption under the RLA was borrowed from the LMRA.

*See Brown v. Illinois Central R.R. Co.*, 254 F.3d 654, 667 n.13 (7th Cir. 2001) (noting that the

Supreme Court adopted the standard for addressing LMRA preemption to resolve claims of RLA

preemption); *Miller*, 926 F.3d at 904 (relying on *Lingle*, a Supreme Court decision on LMRA

preemption, in its analysis of RLA preemption); *Miller*, 926 F.3d at 904 (explaining that under the Supreme Court's LMRA and RLA precedent, "if a dispute necessarily entails the interpretation or administration of a collective bargaining agreement, there's no room for individual employees to sue under state law").

14.     The LMRA applies to Jackson Park SLF because it is a supportive living facility, which is involved in an industry that affects commerce. *See Glen Manor Home for the Jewish Aged v. Nat'l Labor Relations Bd.*, 474 F.2d 1145, 1149 (6th Cir. 1973) (affirming decision that held nursing home met the "industry affecting commerce" requirement); *Maddox v. Grandview Care Ctr., Inc.*, 780 F.2d 987, 989 (11th Cir. 1986) (in Title VII context, stating that an operator of nursing homes was in industry affecting commerce).

## DEFENDANTS HAVE COMPLIED WITH ALL PREREQUISITES FOR REMOVAL

15.     Counsel for Jackson Park SLF certifies that a copy of this Notice of Removal is being filed with the Clerk of the Cook County Circuit Court, pursuant to 28 U.S.C. § 1446(d).

16.     Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon Jackson Park SLF in the State Court Action are attached hereto as Exhibit A.

17.     According to the Illinois Secretary of State's website, co-defendant Jackson Park Supportive Living Facility, LLC was involuntarily dissolved; therefore, its consent to removal cannot be obtained.

18.     Jackson Park SLF reserves the right to amend or supplement this Notice of Removal, and reserves all rights and defenses, including those available under Federal Rule of Civil Procedure 12.

WHEREFORE, Jackson Park SLF hereby removes the above-captioned civil action from the Circuit Court of Cook County, Illinois to the United States District Court for the Northern District of Illinois.

Dated:  December 16, 2019   Respectfully submitted,

         **JACKSON PARK SLF, LLC**

     By: */s/ Jonathon M. Studer*
       One of Its Attorneys
      Melissa A. Siebert (#6210154)
      Matthew C. Wolfe (#6307345)
      Jonathon M. Studer (#6321582)
      SHOOK, HARDY & BACON L.L.P.
      111 South Wacker Drive, Suite 4700
      Chicago, IL  60606
      Tel:  (312) 704-7700
      Fax:  (312) 558-1195
      masiebert@shb.com
      mwolfe@shb.com
      jstuder@shb.com

**CERTIFICATE OF SERVICE**

I, Jonathon M. Studer, an attorney, hereby certify that on December 16, 2019, I caused a

true and correct copy of **DEFENDANT JACKSON PARK SLF, LLC'S NOTICE OF**

**REMOVAL** to be electronically filed with the Clerk via the Court's ECF system and served via

Electronic Mail upon the following counsel of record addressed as follows:

> James B. Zouras
> Ryan F. Stephan
> Catherine T. Mitchell
> STEPHAN ZOURAS, LLP
> 100 North Riverside Plaza, Suite 2150
> Chicago, IL  60606
> (312) 233-1550
> (312) 233-1560 (Fax)
> jzouras@stephanzouras.com
> rstephan@stephanzouras.com
> cmitchell@stephanzouras.com
>
> ***Attorneys for Plaintiff***

        */s/ Jonathon M. Studer*

4847-6773-1374