IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHRISTOPHER WILLIAMS, on behalf
of himself and all others similarly
situated,

Plaintiff,

v.

JACKSON PARK SLF, LLC

Defendant.

Case No. 19-CV-8198

Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this proposed class action for alleged violations of the Illinois Biometric Information Privacy Act. Defendant now moves to dismiss the complaint on preemption grounds with prejudice. Defendant's motion to dismiss [14] is granted, but the complaint is dismissed without prejudice.

### I.    Background

Christopher Williams ("Williams") worked as a nurse technician for Defendant Jackson Park SLF, LLC ("Jackson Park")[1] from October 2016 to August 11, 2019. (First Amended Class Action Complaint ("FAC"), Dkt. 2, Attachment 1 ¶ 42). Jackson Park is in the business of rehabilitation and supportive living for adults with physical disabilities. FAC ¶ 1. Jackson Park requires employees to scan their handprints to clock in and out of work. *Id*. ¶ 3. Handprint scans are considered "biometric identifiers" under the Illinois Biometric Privacy Act ("BIPA"), 740 Ill. Comp. Stat.

---

[1] Williams voluntarily dismissed his claims without prejudice against Defendant Jackson Park Supportive Living Facility, LLC. (Dkt. 24).

14/10. Williams alleges that Jackson Park violated BIPA by (1) failing to institute, maintain, and adhere to a publicly-available retention schedule or guidelines for permanently destroying biometric identifiers (*see* 740 ILCS § 14/15 (a)); (2) failing to obtain informed written consent and release before obtaining employees' biometric identifiers (*id.* § 15 (b)); and (3) failing to obtain consent before disclosing biometric identifiers and information (*id.* § 15 (d)). FAC ¶¶ 65–92.

Williams seeks to represent a class of "[a]ll individuals working for Defendants in the State of Illinois who had their handprints collected, captured, received, otherwise obtained, maintained, stored or disclosed by Defendants during the applicable statutory period." *Id.* ¶ 55.

According to Williams, he was a member of a union during most of his employment with Jackson Park. (*See* Williams Aff. ¶¶3-5, Dkt. 25-1, Ex. A). He states that he was not a union member for about the first 30 days of his employment. *Id.* ¶4.[2] Once he joined the union he was a member of the United Food & Commercial Workers International Union Local 1546 ("Local 1546") which is the "sole collective agent for Local 1546's members," pursuant to the collective bargaining agreement (CBA) between Local 1546 and Jackson Park. (Pokorny Decl.; Dkt. 15-1 at ¶8). Local 1546 and Jackson Park were signatories to a CBA effective June 1, 2014 to May 31, 2017 and then a CBA effective January 1, 2017 to May 31, 2020. (*Id.*) These CBAs contained a management rights clause in § 3.1. (*Id.*, Ex. C at 53 and Ex. D at 76). The

---

[2] Jackson Park disputes this. See Pokorny Decl. ¶5. The Court construes the facts in the light most favorable to Williams and notes he does not dispute that he was a union member for the majority of his employment and his employment was governed by the CBA.

CBAs also included a grievance procedure for disputes about the application or interpretation of the CBAs. The grievance procedure ends in arbitration pursuant to the Federal Mediation and Conciliation Service. (*Id.*, Ex. C at 64–65 and Ex. D at 87–88 (Article XVIII)).

## II.  Standard

Although Jackson Park moves to dismiss under Federal Rule of Civil Procedure 12 without citing a specific part of that rule, it argues that "[a] dismissal based on labor law preemption should be labeled as a judgment on the pleadings or a dismissal for lack of subject matter jurisdiction." (Dkt. 15 at 5). The Court construes the motion as a Rule 12(b)(1) motion for lack of subject matter jurisdiction. *See Miller v. Southwest Airlines Co.*, 926 F.3d 898, 901 (7th Cir. 2019) (dismissal based on federal labor law preemption should be "labeled either as a judgment on the pleadings, Fed. R. Civ. P. 12(c), or a dismissal for lack of subject-matter jurisdiction."); *see also Peatry v. Bimbo Bakeries USA, Inc.,* 2020 WL 919202 (N.D. Ill. Feb. 26, 2020) (considering defendant's arguments under Rule 12(b)(1)).

"A motion to dismiss under Rule 12(b)(1) tests the jurisdictional sufficiency of the complaint, accepting as true all well-pleaded factual allegations and drawing reasonable inferences in favor of the plaintiffs." *Bultasa Buddhist Temple of Chi. v. Nielsen*, 878 F.3d 570, 573 (7th Cir. 2017). However, "[w]here, as here, plaintiff's complaint is facially sufficient but external facts call the court's jurisdiction into question, we 'may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether

in fact subject matter jurisdiction exists.'" *Taylor v. McCament*, 875 F.3d 849, 853 (7th Cir. 2017) (citations omitted); *see also Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009).

## III.    Analysis

### A. The LMRA Preempts Williams' BIPA Claims

Jackson Park argues that because Williams is a union member, the issue in dispute here is preempted under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Based on *Miller v. Southwest Airlines Co.*, this Court agrees.

Section 301 of the LMRA preempts a state law claim if resolution of the claim "requires the interpretation of a collective-bargaining agreement." *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 413, 108 S. Ct. 1877, 1884 (1988). Section 301 preempts "claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" *Gray v. Univ. of Chicago Med. Ctr., Inc.,* 2020 WL 1445608, at *2 (N.D. Ill. Mar. 25, 2020) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987)). *See Miller*, 926 F.3d at 904; *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) and *Healy v. Metro. Piet & Exposition Auth.*, 804 F.3d 836 (7th Cir. 2015)).

Like here, in *Miller*, 926 F.3d 898, union members used their fingerprints (biometric identifiers pursuant to 740 ILCS 14/10) to clock in and out of work. There plaintiffs alleged that defendants "implemented these [timekeeping] systems without their consent, failed to publish protocols, and use third-party vendors to implement

4

the systems." *Id.* at 901.[3] These mirror the claims here. (FAC at ¶¶ 65–92, alleging violations of BIPA § 15(a)), 15(b), 15(d)). In finding preemption, the Seventh Circuit held that "how workers clock in and out is a proper subject of negotiation between unions and employers." 926 F.3d at 903.

Williams contends that his claim should not be preempted because the union cannot waive his statutory privacy rights under BIPA. *Miller* addressed this argument directly when it held that BIPA's text allows authorized agents, such as unions, to act on members' privacy rights. *Miller*, 926 F.3d at 904 ("That biometric information concerns workers' privacy does not distinguish it from many other subjects, such as drug testing, that are routinely covered by collective bargaining and on which unions give consent on behalf of the whole bargaining unit."). *See also Peatry,* 2020 WL 919202 at *4 (rejecting similar privacy rights argument by plaintiff and noting that BIPA "explicitly allows" an authorized agent to receive notices and consent to the collection of biometric information). *See also Frisby v. Sky Chefs, Inc.*, 2020 WL 4437805, at *4 (N.D. Ill. Aug. 3, 2020) ("[plaintiff's] BIPA and negligence claims involve data privacy rights common to all of the defendants' employees and deal with a mandatory subject of collective bargaining: the mechanism through which workers clock in and out."); *Darty v. Columbia Rehab. & Nursing Ctr., LLC*, 2020 WL 3447779, at *2 (N.D. Ill. June 24, 2020) ("citing *Miller*, courts in this district have

---

[3] The Seventh Circuit consolidated *Miller,* 18-cv-86, with *Johnson*, 17-cv-8858. The Court found that the purported BIPA violations—whether related to lack of consent, retention and destruction schedules, or unauthorized disclosure to another party—"are topics for bargaining between unions and management" and are "question[s] for an adjustment board." *Miller*, 926 F.3d at 903.

consistently found federal preemption by Section 301 of the LMRA in similar BIPA cases.").[4]

Although Williams argues against preemption because the CBA here did not anticipate the use of biometric information, neither the CBA in the present case or the *Miller* case mentioned biometric information. But the *Miller* Court also addressed this question when it determined that whether the CBA management rights clause gave rise to consent regarding biometric data is a question for an adjustment board.[5] *Miller,* 926 F.3d at 903.

Williams attempts to avoid preemption by relying on cases that are easily distinguishable. In *Fowler v. Ill. Sports Facilities Auth.*, 338 F. Supp. 3d 822 (N.D. Ill. 2018), the court held that plaintiff's *negligence claims*—"true state law claims" — were not preempted by § 301 after finding defendant's reading of the parties' collectively bargained agreement was not plausible. *Id.* at 827-28. And *Rogers v. BNSF Ry. Co.*, 2019 WL 5635180 (N.D. Ill. Oct. 31, 2019), also relied on by Williams, did not involve the LMRA. *See Gray*, 2020 WL 1445608, at *5 (distinguishing *Rogers*). Finally, the Illinois trial court opinions cited by Williams are not binding on this

---

[4] Williams fails to acknowledge that although *Miller* involved the Railway Labor Act ("RLA"), the RLA preemption standard is "virtually identical" to the LMRA standard. *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 260 (1994). *See Peatry,* 2020 WL 919202; *see also Gray*, 2020 WL 1445608, at *3.

[5] The management rights clauses in the *Miller* CBA and Williams' CBA are similar. *Compare* "The right to manage and direct the work force, subject to the provisions of this Agreement, is vested in and retained by the Company," *Miller*, 18-cv-86, Dkt. 1, CBA at Art. 2–D, *with* "Management of the Business, the control of the premises and direction of the working force are vested exclusively in the Employer subject to the provision of this Agreement." (Dkt. 15-1, CBA at § 3.1).

Court, do not permit this Court to disregard Seventh Circuit precedent, and to the extent they contradict decisions by courts in this Circuit since *Miller*, this Court declines to follow them.

Finally, Williams attempts to distinguish *Miller* because the Miller plaintiffs sought monetary damages for "compensation injuries", and he does not seek such damages. Williams fails to explain how this distinguishes the *Miller* ruling in a meaningful way. The *Peatry* court rejected this same argument. 2020 WL 919202 at *4. Moreover, the district judge in *Miller v. Sw. Airlines Co.* (prior to the appeal) denied plaintiffs' Rule 59(e) motion and request to amend the complaint, concluding that the dispute would still need to be submitted to mandatory arbitration even without the compensation injury allegations. 2018 WL 5249230, at *2 (N.D. Ill. Oct. 22, 2018).

### B. Forum for Relief and Williams' First Month of Employment

Williams argues that if his claim is preempted, he will not have a viable forum in which to seek relief. He asserts that the CBA's seven-day window to raise claims may preclude him from pursuing administrative remedies at all. Dkt. 25 at 8.[6] A similar argument was rejected in *Gray*, 2020 WL 1445608. This Court agrees with *Gray*'s analysis:

> The initial forum for Plaintiff to bring her claims was specified in the grievance procedures laid out in the CBA…There is no evidence before the Court that Plaintiff followed those procedures, and Plaintiff's

---

[6] That portion of the CBA reads: "All grievances except those hereinafter specified must be presented in the first step of the grievance procedure within seven (7) days, except for wage claims which shall be presented within a reasonable time, from the date the cause for the grievance occurs or the employee or the Union has knowledge of the cause for the grievance, not to exceed 30 days." (Dkt. 15-1, CBA at §18.4).

response brief suggests that she did not…But even if the grievance procedures were not available for whatever reason, this Court has no authority to confer subject matter jurisdiction on itself in order to entertain Plaintiff's case. In fact, the Seventh Circuit has already rejected this type of "remedial gap" argument. *Healy*, 804 F.3d at 845 ("Plaintiffs argue that § 301's general preemption rules and MPEA's immunity from § 301 claims leave them without a remedy against a third-party like MPEA. We can only acknowledge that this "remedial gap" exists and hold that we cannot create a remedy where precedent forbids us from doing so.") (citing *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1179 (7th Cir. 1993)).

*Id.* at *5. According to the Supreme Court, a state law claim "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract…must either be treated as a § 301 claim . . . or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers Corp.*, 471 U.S. at 220. In order for this Court to treat a claim as a § 301 claim, the plaintiff must first exhaust administrative remedies, unless certain exceptions apply. *See McLeod v. Arrow Marine Transp. Inc.*, 258 F.3d 608, 616 (7th Cir. 2001). As the Seventh Circuit explained in *Healy*, "First, the plaintiff-employee must grieve the dispute using the grievance process outlined in the relevant collective bargaining agreement…Second, if the grievance process 'does not produce a satisfactory result' for the employee, he can then submit the dispute to arbitration. In both proceedings, the union would be the employee's representative. Finally, if unsatisfied with the arbitrator's decision, the employee could then bring the claim in federal court." 804 F.3d at 843. Williams' complaint and response brief contain no evidence that he pursued the grievance process.

Williams also argues that he was not a union member for the first month of his employment "when his biometrics were being collected, stored, used and disseminated without notice or consent…Regardless, it just so happens that members of a union are among the victims of Defendant's conduct." (Dkt. 25 at 6). In a recent case in this district, the court concluded that an individual who was *never* a union member was not subject to the same LMRA preemption standard. *See Darty*, 2020 WL 3447779, at *2-3 (remanding case to state court because plaintiff's individual claim was unrelated to the union and her lack of union membership defeated federal-question jurisdiction).[7] In Williams' complaint, he seeks to represent a class of "*all individuals working for Defendants in the State of Illinois* who had their handprints collected, captured, received, otherwise obtained, maintained, stored or disclosed by Defendants during the applicable statutory period." FAC ¶ 55 (emphasis added). Thus Williams' current proposed class definition is broad. And he does not dispute that he was a union member for the majority of his employment. *See Crooms v. Sw. Airlines Co.,* 2020 WL 2404878, at *5-6 (N.D. Ill. May 12, 2020) (rejecting plaintiffs' attempts to avoid *Miller* by pointing to their initial six-month probationary period before joining the union, and by trying to limit their class definition when in fact plaintiffs sought to represent all workers, union members or not).

The Court concludes that Williams should be permitted a final attempt to amend his individual and, if possible, class complaint if he can do so consistent with Rule 11. *See Gray*, 2020 WL 1445608, at *5 (dismissing complaint but allowing amendment);

---

[7] Williams has not moved to remand in this case.

*Peatry,* 2020 WL 919202 (allowing certain claims to proceed that predated date when collective bargaining agreement governing plaintiff's employment went into effect).

## IV.    Conclusion

For the stated reasons, Defendant's motion [14] is granted. Plaintiff Williams' complaint is dismissed without prejudice. Williams has until October 16, 2020, to file a second amended complaint, if he believes he can do so consistent with this opinion and Federal Rule of Civil Procedure 11.

E N T E R:

Dated: September 24, 2020

_____
MARY M. ROWLAND
United States District Judge